**SCHLEIER LAW OFFICES, P.C.**
3101 N. Central Avenue, Suite 1090
Phoenix, Arizona 85012
Telephone: (602) 277-0157
Facsimile: (602) 230-9250

TOD F. SCHLEIER, ESQ. #004612
Tod@Schleierlaw.com
BRADLEY H. SCHLEIER, ESQ. #011696
Brad@Schleierlaw.com

**SURVJUSTICE, INC.**
1015 15th Street NW, Suite 632
Washington, D.C 20005
Telephone: (202) 869-0697
Facsimile: (202) 869-0696

CARLY MEE, ESQ. #90912
Carly.Mee@survjustice.org
*Pro Hac Vice Pending*

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jane Doe, a minor, by and through her next friend Julie Doe, | )<br>)<br>) |
| Plaintiffs, | )<br>)     Case No. |
| | )<br>)     **COMPLAINT**<br>)     **JURY TRIAL DEMANDED** |
| Tempe Union High School District, a political subdivision of the State of Arizona; Tyrek Chambers, a single man, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

/ / /

## COMPLAINT AND JURY DEMAND

Plaintiff Jane Doe,[1] by and through her undersigned counsel, hereby sues the Defendant, Tempe Union High School District ("School District"), under Title IX of the 1972 Amendments to the Higher Education Act to remedy the hostile environment that Plaintiff suffered as a direct result of the School District's utter breach of its duty to protect children under its care and to provide an education free from sexual violence and other forms of gender-based harassment. Plaintiff also sues Defendant Tyrek Chambers arising out of his sexual assault of Plaintiff.

## PARTIES, JURISDICTION AND VENUE

1.    Plaintiff Jane Doe is a natural person who is, and was for all relevant times was, a resident of the state of Arizona.

2.    The School District is a public school district within the state of Arizona that encompasses Desert Vista High School ("DVHS"), which Plaintiff attended. The School District maintains its principal place of business at 500 West Guadalupe Road, Tempe, AZ 85283-3599. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this litigation involves matters of federal law, specifically claims made under the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1683 *et. seq.*

---

[1] Contemporaneously with this Complaint, Plaintiff has filed a motion to proceed under a pseudonym that sets forth the legal and factual authority for both her and her mother proceeding under a pseudonym to protect the identity of the Plaintiff, who was sexually assaulted while she was a minor.

3. This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367, as they form part of the same case or controversy stemming from the allegations that form the basis of the federal claims in this action.

4. This Court has personal jurisdiction over Defendants pursuant to FED. R. CIV. P. 4(k)(1)(a) because Defendants are domiciled in, and conduct business within, this judicial district.

5. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because all the acts and omissions alleged herein occurred in this judicial district.

## PARTIES

6. Plaintiff Jane Doe is a former DVHS student. She enrolled at DVHS in August 2015, when she was just 14 years old.

7. At the time that Jane Doe suffered sexual harassment and sex discrimination at DVHS, she was a minor and a resident of Maricopa County, Arizona. She is now a 17-year-old resident of Maricopa County, Arizona and is in her first year of attendance at Arizona State University. This Complaint is filed prior to Jane Doe's 18th birthday and thereby is filed within the applicable statute of limitations.

8. Plaintiff Julie Doe is the mother and next friend of Jane Doe. She is a resident of Maricopa County, Arizona.

9. DVHS is a public high school located within the School District.

10. The School District is a recipient of federal funds within the meaning of 20 U.S.C. § 1681(a). The School District geographically lies within Tempe, Arizona.

11. Tempe Union High School District Governing Board ("School Board") governs and operates Defendant School District and has the authority to adopt, enforce, and monitor all policies for the management and governance of the School District's schools, including DVHS.

12. Defendant Tyrek Chambers is a single man and a resident of Maricopa County, Arizona.

## FACTUAL ALLEGATIONS

### 1. Defendant Chambers Sexually Assaults Jane Doe

13. Plaintiff Jane Doe was a 16-year-old junior student at DVHS during the 2017-2018 academic year.

14. Defendant Tyrek Chambers was a 17-year-old junior student at DVHS during the 2017-2018 academic year. He is now 19 years old.

15. On August 26, 2017, Defendant Chambers sent Jane Doe a message through Snapchat, a social media application, and asked her to hang out. She agreed.

16. On August 27, 2017, Defendant Chambers said that he did not have a car to pick Jane Doe up from her house. He offered to send an Uber to bring her to his house, but she declined and opted to drive herself to his house at 2879 E. Detroit Street, Chandler, Arizona 85225.

17.   When Jane Doe arrived at Defendant Chambers' house, he came outside to say hello and was accompanied by his cousin, Montay Washington ("Washington"). Jane Doe recognized Washington as she had a chemistry class with him at DVHS.

18.   Defendant Chambers told Jane Doe to come inside but instructed her to be quiet because he claimed that his aunt did not know that Jane Doe was present. He told her to go into the bedroom on the right after entering through the front door and she complied with his instructions. Defendant Chambers said he would be right back and left Jane Doe alone in the bedroom. She sat down on the bed.

19.   Defendant Chambers re-entered the room, sat down on the bed next to Jane Doe, and tried to turn on the television. It was not working so he called Washington to come and fix it. Washington did so and then left, closing the bedroom door behind him.

20.   After Washington closed the door, Defendant Chambers began to kiss Jane Doe on her neck and mouth. He pulled down her shorts and attempted to penetrate her vagina with his fingers but she resisted, telling him "no" and "I don't think I want to do this."

21.   Defendant Chambers ignored Plaintiff's objections, climbed on top of her, and penetrated her vagina with his penis without her consent and without using a condom. As he raped her, Defendant Chambers instructed Jane Doe to call him "dad." Jane Doe remained silent.

22.  During the sexual assault, Defendant Chambers grabbed his cell phone and took videos and/or pictures without Jane Doe's consent.

23.  After several minutes passed, Defendant Chambers stopped his vaginal rape of Jane Doe. However, he then instructed Jane Doe to perform oral sex on him and forcibly pushed her head onto his penis. Jane Doe performed oral sex on Defendant Chambers until he finally let her stop but only so that he could again penetrate her vagina with his penis. Eventually, Defendant Chambers ceased raping Jane Doe and ejaculated into a washcloth.

24.  Defendant Chambers left the room for a few minutes and then re-entered, telling Jane Doe that she had to leave so that he could drive Washington to sports practice.

25.  Jane Doe got into her car and called her friend, stating that she had just lost her virginity to Defendant Chambers. Jane Doe drove to a shopping mall parking lot near her house to meet her friend. There, Jane Doe informed her friend that she had told Defendant Chambers to stop but he proceeded to have sexual intercourse with her and made her perform oral sex on him. Jane Doe also told her friend that Defendant Chambers had taken video or photographs. Jane Doe's friend became upset and asked what Jane Doe wanted to do. Jane Doe was afraid to tell her mother so the friend called her own mother, who came to see the two girls in person and presented Jane Doe with various options.

26.   Jane Doe was not ready to go home so she followed her friend and friend's mother back to their house. Once there, Jane Doe learned that she was bleeding from her vagina. She changed into a new pair of shorts that she borrowed from her friend.

27.   After some time, Jane Doe decided to go home and tell her mother about the rape. She drove home and informed Julie Doe: "I think I got raped."

28.   Julie Doe immediately called 9-1-1.

29.   Jane Doe and Julie Doe went to the Chandler Police Department at approximately 7:00 p.m., where Detective Kim Homan interviewed Jane Doe.

30.   At approximately 1:00 a.m., Jane Doe went directly to a clinic where she received a forensic rape kit, sexually transmitted disease testing, and treatment for potential sexually transmitted diseases. Among other things the testing revealed that Defendant Chambers inflicted vaginal lacerations on Jane Doe. On or around September 5, 2017, Jane Doe learned that Defendant Chambers had also infected her with gonorrhea.

**2.   Jane Doe Seeks a Court Order for Her Protection and Provides Actual Notice to DVHS of the Sexual Assault**

31.   On August 28, 2017, Julie Doe, on behalf of Jane Doe, successfully filed for an Injunction Against Harassment ("IAH") in Chandler Municipal Court, which prohibited Defendant Chambers from contacting Jane Doe or coming within 25 feet of her.

32. That same day, Julie Doe met with DVHS Dean of Students Freddie Martin in person. She provided actual notice of the rape and notified Dean Martin about the IAH. Dean Martin merely provided Julie Doe with his cell phone number and asked her to let him know how he could help. Dean Martin took no steps to ensure that Defendant Chambers would not come into contact with Jane Doe at school.

33. Jane Doe had a class with Defendant Chambers but DVHS officials failed to remove him in order to comply with the IAH or provide any accommodations to Jane Doe. As a result, she was forced to miss that class for three days.

34. On August 30, 2017, Detective Homan went to DVHS in person and served Defendant Chambers with a copy of the IAH. DVHS Principal Christine Barela and Assistant Principal T.J. Snyder were present for the serving of the IAH. Detective Homan also seized Defendant Chambers' cell phone based on a court order that she had obtained. Detective Homan contacted Defendant Chambers' legal guardian to request permission to interview him, but his guardian denied the request.

35. That same day, Julie Doe emailed Assistant Principal Snyder to express concerns about Jane Doe's safety while Defendant Chambers remained on campus. In response, Assistant Principal Snyder stated that they were following district policy but could not share any information with Julie Doe due to the Family Educational Rights and Privacy Act ("FERPA").

36.     Around August 31, 2017, Assistant Principal Snyder finally removed Defendant Chambers from the class that he shared with Jane Doe. However, school officials did not investigate the report of Defendant Chambers' sexual violence against Jane Doe, institute any disciplinary measures against Defendant Chambers, or take any steps to protect Jane Doe. Julie Doe also requested that Washington be removed from the class he shared with Jane Doe, but that did not happen.

37.     Julie Doe repeatedly contacted Principal Barela to inquire about a school investigation but was told that the school had to wait for the criminal investigation to run its course. Over the following month, Defendants still did not investigate the report regarding Defendant Chambers' sexual assault against Jane Doe, did not interview Defendant Chambers or any witnesses, did not discipline Defendant Chambers, and did nothing to protect Jane Doe from Defendant Chambers, while allowing him to attend DVHS without any restrictions.  Defendants did not provide any written memorialization to Jane Doe or Julie Doe regarding their reports of the sexual assault and Order of Protection violations, contrary to school policy.

38.     In a meeting with Julie Doe on September 21, 2017, Principal Barela stated: "when police are investigating something, I can't interfere and question him and question her and decide what's going on, so that's why I keep asking my officer to please call because I can't really do anything. Now, if it happened on campus, that's a different thing that I would investigate."

39.    Throughout August-November 2017, Jane Doe saw Defendant Chambers at school at least 40 times at school or after school hours at events such as football games. Jane Doe attended one football following the assault, and after seeing Defendant Chambers, decided not to attend any further games out of fear of seeing him. Defendant Chambers frequently made eye contact with Jane Doe and sat or walked near her, in violation of the IAH terms. DVHS took no action to stop these encounters from happening.

40.    On or around September 12, 2017, Julie Doe began to inquire about Jane Doe graduating early given that she did not feel safe at DVHS as a result of its failure to remedy the hostile environment against her and its refusal to implement any measures to ensure compliance with the IAH. Thereafter, Jane Doe added additional classes to her course load so that she could leave DVHS a year earlier than planned. In order to keep up with her classes, Jane Doe had to quit her job at Peter Piper Pizza.

41.    Jane Doe stopped attending school-sponsored activities (such as sporting events, homecoming, and assemblies) due to her fear of seeing Defendant Chambers.

42.    On October 19, 2017, Julie Doe again met with Principal Barela. School District Assistant Superintendent Anna Battle and Director of Student Affairs and District Safety John Meza were also present. The school officials continued to refuse to

investigate the complaint of sexual violence, stating that they had to let the police investigate instead.

43. Defendants did not offer Jane Doe any counseling, academic accommodations, safety measures, or other services to remediate the ongoing hostile environment.

44. Left on her own to ensure Jane Doe's safety with no help from Defendants, Julie Doe successfully filed for an Order of Protection on November 2, 2017 in the Superior Court of Arizona in Maricopa County. She sought stricter terms given that DVHS was refusing to ensure that Defendant Chambers abided by the IAH.

45. On November 4, 2017, Julie Doe provided Principal Barela with a copy of the Order of Protection and demanded that DVHS establish a plan to ensure Defendant Chambers' compliance with its terms on school grounds. Julie Doe received no response from DVHS. In the next four days, Defendant Chambers came into contact with Jane Doe at least three times in violation of the Order of Protection. As a result, Julie Doe followed up again with Principal Barela on November 8, 2017. Only then did school officials establish paths that Defendant Chambers was required to take to class but simultaneously refused to change his lunch hour to avoid contact with Jane Doe. They also established required paths for Jane Doe to take around the school to place the burden for avoiding Defendant Chambers on her, contrary to the terms of the Order of Protection. Over the next week, Jane Doe encountered Defendant Chambers at least three more times on DVHS' campus. Each time, Julie Doe

reported the encounters.  In response, school officials repeatedly removed Jane Doe from class to interview her about the event, thereby disrupting her education, but subsequently did nothing to prevent further contact with her assailant. Principal Barela claimed that School Resource Officer Richard Wichman was investigating the Order of Protection violations, yet Jane Doe never received notice of the outcome of any such investigation.

46.   On November 15, 2017, Julie Doe informed Principal Barela that Jane Doe had encountered Defendant Chambers approximately four more times on campus during school hours.

47.   On November 17, 2017, School District Superintendent Kenneth Baca erroneously copied Julie Doe on an email to his employees, stating: "Time to meet on this was when I sent you and Dr. Battle an email earlier this week. I'm unclear as to why there has been resistance to my directive. We have a male student who has refused to cooperate with an investigation. We have a female student who has alleged a sexual assault. Dr. Battle and I had a very frank discussion of this situation on Wednesday. Folks- take care of this- TODAY."

48.   On December 6, 2017, Julie Doe met with Principal Barela, Assistant Superintendent Battle, and Director Meza. Julie Doe asked for DVHS to comply with Title IX by investigating Jane Doe's complaint of sexual violence. However, the school officials stated that they would not investigate the sexual assault because

they lacked "reasonable suspicion." The school officials present spoke at length about the need for due process for Defendant Chambers and alleged that they still needed to speak with him to ensure due process. Julie Doe also asked why DVHS had not followed the School District's policy requiring that verbal reports be converted to written records on School District-provided forms and confirmed by the victim for accuracy. Director Meza claimed that the form was not necessary because they had received a copy of the IAH and because the crime had been reported to police.

49.  On December 11, 2017, Julie Doe sent a letter to Principal Barela, Assistant Superintendent Battle, and Director Meza to confirm the substance of their December 6 meeting. In this letter, Julie Doe noted that the school officials had informed her during the meeting that DVHS was not conducting an investigation under Title IX but was instead relying solely on the criminal process. Finally, Julie Doe reiterated her request for an investigation by DVHS and specified evidence that DVHS should review as well as witnesses for DVHS to interview.

50.  On December 18, 2017, Assistant Superintendent Battle sent Julie Doe a letter in response, incorrectly alleging that DVHS had implemented prompt and adequate interim measures to protect Jane Doe. Assistant Superintendent Battle also spoke at length about the criminal investigation without any mention of a Title IX investigation by DVHS. Finally, Assistant Superintendent Battle notified Julie Doe

that Defendant Chambers would be moved to the School District's alternative high school to complete the academic year, yet would remain on DVHS' basketball team while coming to DVHS premises frequently for practices and games. She advised that Jane Doe would have to choose to avoid events if she did not want to see Defendant Chambers.

51.   As she continued attending school at DVHS, Jane Doe became isolated and avoided attending school events due to her fear of seeing Defendant Chambers. Jane Doe was diagnosed with Post Traumatic Stress Disorder ("PTSD") due to Defendants' sex discrimination against her and failure to remedy the ongoing hostile environment against her. Plaintiff suffered from suicidal ideations, had trouble sleeping, and experienced nightmares and flashbacks. Jane Doe had to begin taking antidepressants.

52.   Jane Doe rushed to graduate a year early from DVHS as a result of the hostile environment that she suffered at DVHS, which placed significant financial strain on Julie Doe, who had planned to have another year to save for the cost of college tuition.

**3. Defendant Chambers is Arrested and DVHS' Refusal to Release Information**

53.   On February 14, 2018, DVHS sent out its newsletter and named Defendant Chambers as the "Player of the Game" for a recent basketball game.

54. On March 26, 2018, the School District posted on Twitter a list of the student athletes it would be honoring at a ceremony that night. The list included Defendant Chambers and listed him as part of the DVHS basketball team.

55. On March 1, 2018, Chandler Police Department arrested Defendant Chambers, who was then released on bail and required to wear an ankle monitor until his arraignment.

56. On March 4, 2018, Julie Doe notified Superintendent Baca of the arrest and demanded that Defendant Chambers be removed from DVHS completely and also asked DVHS to expel him from the School District. On March 26, 2018, Julie Doe emailed Superintendent Baca again as he had never responded. Julie Doe asked what sanctions were imposed against Defendant Chambers.

57. On March 27, 2018, Superintendent Baca refused to reveal what, if any, disciplinary action the School District took against Defendant Chambers.

58. Jane Doe graduated in June 2018.

## COUNT I

**(Violation of the Educational Amendments Act of 1972 (Title IX),**

**20 U.S.C. § 1681, *et. seq.*)**

59. Plaintiff incorporates all preceding paragraphs into this Count by reference as fully stated herein.

60.   Defendant is recipients of federal education funding within the meaning of Title IX, 20 U.S.C. § 1681(a).

61.   On August 27, 2017, Jane Doe suffered severe sex discrimination when Defendant Chambers raped her. The rape was sufficiently severe, pervasive, and objectively offensive to create a hostile educational environment for Jane Doe at DVHS.

62.   On August 28, 2017, Julie Doe provided Defendant with actual and adequate notice of the ongoing hostile environment by reporting that Defendant Chambers had raped Jane Doe.

63.   The school officials with actual notice (including Principal Barela, Assistant Principal Snyder, and Dean of Students Martin) had the authority and ability to investigate and take meaningful corrective action to end or prevent Defendant Chambers' repeated contact with Jane Doe, which furthered the hostile environment for Plaintiff after the rape. Instead, Defendant refused to promptly implement safety measures, failed to enforce the court orders in place, forced Jane Doe to have repeated interactions with Defendant Chambers, and required Jane Doe to modify her behavior and avoid school functions to avoid further contact with Defendant Chambers.

64.   Defendant had substantial control over Defendant Chambers because he was a student of DVHS.

65.  Defendants' failure to investigate Jane Doe's report of sexual violence, despite repeated requests by Jane Doe and Julie Doe, were clearly unreasonable in light of the known circumstances.

66.  Defendant had an obligation to address sexual violence that creates a hostile environment at school, even if perpetrated outside of the school's grounds.

67.  Defendant had an obligation to address and take steps to prevent subsequent violations of the court orders in place that furthered the hostile environment against Jane Doe.

68.  Through their actions and inaction, Defendant was deliberately indifferent to the sexual harassment and violence that Jane Doe suffered at DVHS, and proximately caused injury to Jane Doe.

69.  Through their actions and inaction, Defendant created a climate in which Defendant Chambers was permitted to repeatedly violate the court orders in place, and proximately caused additional injury to Jane Doe.

70.  As a result of Defendants' deliberate indifference, Jane Doe was subjected to an ongoing hostile environment.

71.  The sexual violence inflicted on Jane Doe was severe, pervasive, and objectively offensive and, along with Defendants' refusal to investigate or take action in response to reports of Defendant Chambers' sexual violence and court order violations, effectively barred Jane Doe's access to educational opportunities and

benefits. Jane Doe had to quit her job, take an extra heavy course load, graduate one year early, frequently miss class due to being pulled out by school officials, and could not take or participate in any extracurricular events or attend school functions.

72. Through their actions and inaction, Defendant acted with deliberate indifference toward Jane Doe's right under Title IX to a safe and secure education environment free of sex discrimination, thus materially impairing her ability to pursue an education at DVHS in violation of the requirements of Title IX.

73. Specifically, Defendant violated Title IX by, *inter alia*:

a. Choosing to take no action to protect Jane Doe after the rape, despite having actual knowledge of the need to supervise, discipline, or take other corrective action to prevent Defendant Chambers' further harassment of Jane Doe in the form of violating the court orders;

b. Choosing to take no action against Defendant Chambers to discipline or increase supervision of him to ensure Jane Doe's safety in attending school, thereby causing her to miss classes and school events, until approximately 112 days after the report, at which point Jane Doe had encountered Defendant Chambers at least 50 times in violation of the court orders in place;

c. Ignoring complaints and reports regarding Defendant Chambers' sexual assault and violation of the court orders and/or being deliberately indifferent thereto;

d.  Failing to conduct their own investigation into reports of Defendant Chambers raping Jane Doe and violating the court orders to instead rely solely on the criminal investigation;

e.  Requiring Jane Doe to protect herself from further sexual harassment, violence, and retaliation from Defendant Chambers by modifying her behavior;

f.  Failing to implement conditions such that Defendant Chambers would not violate the court orders repeatedly;

g.  Failing to investigate Defendant Chambers' furtherance of the hostile environment against Jane Doe by repeatedly violating the court orders in place;

h.  Protecting and advocating for Defendant Chambers, a star basketball player, despite reports and evidence that he had raped Jane Doe;

i.  Creating a climate that tolerated sexual harassment, violence, and other misconduct, and that tolerated the complete disregard of reports of sexual misconduct by Defendant Chambers, or being deliberately indifferent thereto;

j.  Failing to follow the School District's policy and procedures for addressing complaints of student-against-student sexual violence;

k.  Failing to adopt and/or adhere to policies and procedures regarding prompt and equitable grievance procedures and investigation of reports of student-against-student sexual violence;

l.  Failing to provide policy, procedures, and/or training for administrators and employees about investigating complaints of sexual violence;

m.  Failing to discipline Defendants employees and agents identified herein for their willful disregard to Jane Doe's rights and safety, their refusal to adhere to School District policy, or being deliberately indifferent thereto;

n.  Failure to provide, offer, recommend, or coordinate adequate academic, health, counseling, and other assistance and services to Jane Doe after she was raped and suffered repeated court order violations by Defendant Chambers, or being deliberately indifferent thereto; and

o.  Through other actions, inaction, and deliberate indifference.

74.  As a direct and proximate result of Defendants action, inaction, and deliberate indifference, Jane Doe sustained and continues to sustain injuries such as PTSD, suicidal ideations, depression, inability to sleep, and other harms to be established at trial for which she is entitled to compensation.

## COUNT II

### (Assault – Defendant Chambers)

75.  Plaintiff incorporates all preceding paragraphs into this Count by reference as fully stated herein.

76.  Defendant Chambers' conduct was intended to and did cause Plaintiff imminent apprehension of harmful or offensive conduct.

77. Plaintiff was subjected to the imminent apprehension of harmful and offensive contact due to Defendant Chambers' sexual abuse.

78. As a direct and proximate result of Defendant Chambers' sexual misconduct, Plaintiff has suffered and continues to suffer damages in the form of PTSD, fear, physical injury, anxiety, depression, and other pain and suffering.

79. Defendant Chambers' actions were conducted with an evil mind and/or a conscious disregard for the substantial risk of harm to Plaintiff and Plaintiff is entitled to recover punitive and exemplary damages.

## COUNT III

### (Battery – Defendant Chambers)

80. Plaintiff incorporates all preceding paragraphs into this Count by reference as fully stated herein.

81. Defendant Chambers' conduct as set forth above invaded Plaintiff's personal interest in freedom from intentional, unpermitted, and offensive contact with her person.

82. Defendant Chambers' conduct was intended to cause and did in fact cause contact with Plaintiff's person that was harmful and offensive when he sexually assaulted Plaintiff. Said conduct constitutes battery.

83.   As a direct and proximate result of Defendant Chambers' conduct, Plaintiff has suffered and continues to suffer damages in the form of PTSD, fear, physical injury, anxiety, depression, and other pain and suffering.

84.   Defendant Chambers' actions were conducted with an evil mind and/or a conscious disregard for the substantial risk of harm to Plaintiff and Plaintiff is entitled to recover punitive and exemplary damages.

## **COUNT IV**

**(Intentional/Negligent Infliction of Emotional Distress – Defendant Chambers)**

85.   Plaintiff incorporates all preceding paragraphs into this Count by reference as fully stated herein.

86.   The conduct of Defendant Chambers was extreme and outrageous.

87.   Defendant Chambers either intended to cause Plaintiff emotional distress and/or recklessly disregarded the near certainty that distress would result from his conduct.

88.   As a direct and proximate result of Defendant Chambers' outrageous conduct, Plaintiff has suffered and continues to suffer severe emotional distress, humiliation, anxiety, terror and anguish.

89.   Defendant Chambers' acted with an evil mind and/or a conscious disregard for the substantial risk of harm to Plaintiff and Plaintiff is entitled to recover punitive and exemplary damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants, and each of them as follows:

a.  Compensatory damages to be proven at trial;

b.  Punitive damages to be proven at trial;

c.  Preliminary and permanent injunctive relief that:

    i.  Requires School Defendants to provide immediate and ongoing annual trainings on Title IX for all district administrators, staff, and faculty;

    ii.  Requires School Defendant to develop a single, comprehensive school-based response to claims of sex discrimination to be uniformly followed throughout the School District;

    iii.  Requires School Defendants to include in its sex discrimination policies and procedures the provision of immediate safety measures and academic accommodations for the student-victim to ensure minimal academic disruption; and

    iv.  Requires School Defendants to promptly post and disseminate policies and procedures on sex discrimination to all families in the district by mail and to make such policies and procedures available online through the website of each school within the School District, including but not limited to DVHS.

d.  Attorneys' fees and costs; and

1

e.   Such other and further relief as this Court deems just and proper.

2

**JURY DEMAND**

3

4

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial on all

5

claims and issues so triable.

6

DATED this 30th day of October 2018.

7

8

_/s/ Tod F. Schleier_____
Tod F. Schleier, Esq.

9

10

_/s/ Carly N. Mee._____
Carly N. Mee, Esq.
Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26